UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61389-CIV-COHN/SELTZER

SUPER STOP #701, INC., a Florida corporation,
and MAHAMMAD A. QURESHI, an individual,

    Plaintiffs,
vs.

BP PRODUCTS NORTH AMERICA INC.,
a foreign corporation, NFH #2 ENTERPRISE, INC.,
a Florida corporation, and FIROZ A. SARKER, an individual,

    Defendants.
_____/

CASE NO. 08-61301-CIV-COHN/SELTZER

BP PRODUCTS NORTH AMERICA INC.,

    Plaintiff,
vs.

SUPER STOP #701, INC., a Florida corporation,
and MAHAMMAD A. QURESHI, an individual,

    Defendants.
_____/

## OMNIBUS ORDER ON PENDING MOTIONS

THIS CAUSE is before the Court upon Super Stop #701's Motion to Remand [DE 18], BP Products' Motion to Dismiss Counts I-III with Prejudice [DE 15], Super Stop's Motion for Colorado River Abstention in case no. 08-61301-CIV [DE 8], and Super Stop's Motion to Modify Trial Date [DE 17 in Case No. 08-61301]. The Court has carefully considered the motions, responses, and replies, and has heard the argument of counsel on October 31, 2008.

I.  BACKGROUND

This dispute arose from unpaid fuel delivery bills by a gas station operator. Super Stop #701, Inc. ("Super Stop"), whose principal is Mahammad A. Qureshi, owns

a gas station.  It entered into a Dealer Supply Agreement with BP Products North America, Inc. ("BP") in 2006 ("Agreement").  This Agreement required BP to supply fuel to the gas station, which Super Stop leased to a separate company.  That non-party sub-leased the station to Defendants NFH #2 Enterprise, Inc. ("NFH") and Firoz A. Sarker.  Super Stop maintained a $40,000 deposit with BP pursuant to the Agreement.  According to its Complaint, through June of 2008, BP delivered fuel on a pay as you go basis, meaning that each delivery had to be paid for before another delivery was made.  Payments were made through electronic bank accounts set up for this purpose.  However, in June of 2008, Super Stop alleges that BP continued to make deliveries to the station without payments being made.  In all, 17 deliveries of fuel worth $508,000 were made to the station, operated by Defendant Sarker, before Super Stop became aware on July 9, 2008 of the huge balance owed to BP.[1]  On that date, pursuant to the Agreement and the Personal Guarantee ("Rider") signed by Mr. Qureshi, BP sought payment from Super Stop.  Super Stop proceeded to request documentation of all these deliveries, as Sarker had allegedly fled the country.  The Complaint alleges that BP refused to provide the "dump sheet" documents requested by Super Stop.  On July 28, 2008, BP sent a letter to Super Stop terminating the Agreement effective August 4, 2008.  Super Stop filed an action in state court on August 8, 2008, which was later removed to federal court on August 29, 2008 (Case No. 08-61389-CIV).  BP filed its own action in federal court (Case No. 08-61301-CIV) on August 14, 2008.

### A.   Case No. 61389 -- Super Stop sues BP and Sarker

Super Stop filed an action containing four claims against BP and two claims

---

[1] Sarker apparently had his own seven year relationship with BP and had established his own electronic bank account with BP.

2

against Sarker.  Count I seeks declaratory relief that Super Stop and Qureshi are not liable for the $508,000 under the "Form of Guaranty" that is attached to the Agreement. Count II seeks declaratory relief that BP wrongfully terminated the Agreement.  Count III is a breach of contract action for wrongful termination of the Agreement.  Count IV is for violations of the federal Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §2801 *et seq.*  Count V, against Sarker and his corporation, is for violations of Florida's Deceptive an Unfair Trade Practices Act, while Count VI is for conversion of the fuel and/or sale proceeds.

BP removed this action to federal court on the basis of federal question jurisdiction, as Count IV asserts claims under the federal PMPA.  BP then moved to dismiss Counts I-III on the basis of PMPA preemption, while Super Stop has moved to remand the entire action to state court.  The jurisdictional issue of remand should be determined first.

### 1.  Remand

Super Stop  asserts that removal was improper because not all defendants consented to removal as required by the United States Court of Appeals for the Eleventh Circuit.  In re Ocean Marine Mut. Prot. and Indem. Ass'n Ltd., 3 F.3d 353, 355-56 (11th Cir. 1993).  However, an exception to the unanimity requirement is found in 28 U.S.C. § 1441(c), which states that "whenever a separate and independent claim or cause of action . . . is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters in which State law predominates."

Super Stop argues that BP cannot meet its burden on removal because "where

3

there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there [can be] no separate and independent claim." Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 14 (1951); In re City of Mobile, 75 F.3d 605, 608 (11th Cir. 1996).  BP asserts, however, that the claims against it are based upon its Agreement with Super Stop, making them separate and independent from Super Stop's claims against Sarker, which stem from alleged theft of gas station revenues, and therefore removal is proper.  In addition, BP argues that Super Stop's state claims against BP are either preempted under the PMPA (argued in its motion to dismiss) or the Court has supplemental jurisdiction over them because they arose out of a common nucleus of fact.

Super Stop asserts that because its state court claims against BP are not separate and independent from its PMPA claim against BP, that BP cannot meet its burden to justify removal.  Super Stop argues that its declaratory judgment claims are so related to the PMPA claim that they cannot be separate.  However, because the issue here is whether BP needs Sarker's consent for removal, it would seem that BP's analysis is the better approach.  Thus, because Super Stop's claims against BP (taken together) all stem from the transactions associated with the Dealer Agreement, while Super Stop's claims against Sarker are essentially for a separate "wrong," theft and conversion by Sarker, the Court concludes that the claims against Sarker are "separate and independent" under § 1441(c).[2]  The motion to remand is therefore denied, as BP does not need consent from the other defendants to support its removal of the case.

---

[2] If Super Stop's position is followed, a plaintiff could avoid federal court when suing on a federal claim by adding another defendant and bringing related state claims against that defendant.

4

2.  Motion to Dismiss Counts I-III

BP moves to dismiss Counts I, II and III on the grounds that these claims are preempted by the PMPA. The PMPA contains a preemption provision which precludes States from enforcing laws "with respect to termination (or the furnishing of notification with respect thereto) of any such franchise. . . unless such provision of such law or regulation is the same [as under this subchapter]." 15 U.S.C. §2806(a)(1). BP asserts that Count I, for declaratory relief regarding the Form of Guaranty, seeks to interpose defenses to the non-payment of funds which led to termination.[3] BP's argument for preemption is stronger with regard to Counts II and III, which specifically assert that a wrongful termination took place. Super Stop argues that its claims are not in conflict with the PMPA, and therefore are not preempted.

There are two Eleventh Circuit opinions on this issue: Shukla v. BP Exploration and Oil, 115 F.3d 849 (11th Cir. 1997), and Seckler v. Star Enterprises, 124 F.3d 1399 (11th Cir. 1997)   In Shukla, a fraud claim was considered preempted because it was related to nonrenewal of a franchise agreement. 115 F.3d at 855. In Seckler, the Eleventh Circuit reversed a preemption ruling because the state claims in that case did not concern termination or non-renewal. 124 F.3d at 1404-06. Rather, Mr. Seckler, the franchisee, in fact had his franchise renewed, but sued because he believed he had accepted a valid offer for the petroleum company to sell the gas station to him.

BP asserts that the case at bar is similar to Shukla, where the franchise agreement was not renewed and preemption was found, rather than Seckler, where there was no termination or non-renewal, and no preemption applied. With regard to

---

[3] BP seems to both argue complete field preemption, as well as the more narrow conflict preemption. There is little support for imposition of field preemption. Shukla v. BP Exploration and Oil, 115 F.3d 849, 855 (11th Cir. 1997).

5

Count I, Super Stop argues that the issue of whether it is liable under the "Form of Guarantee" arose one month prior to the later termination of its franchise by BP, and therefore should not be preempted.  BP asserts that any ruling on that declaratory judgment claim will necessarily implicate the termination because Qureshi's promise to pay is all part of the same Dealer Agreement.

BP has an even stronger argument as to Counts II and III.  Both of these state claims clearly relate to termination of the Agreement.  Super Stop's only argument here is that its claims are not in conflict with the PMPA and do not impose any additional requirements upon BP.  However, in that case, the claims appear redundant to the actual PMPA claim brought by Super Stop.

The Court concludes that all three claims are preempted, and adopts BP's analysis of this issue.  The claim in Count I necessarily implicates the termination of the Agreement, and Counts II and III expressly relate to termination.  There exists the possibility that allowing these state claims to proceed may result in a conflict with the PMPA.  However, even though preempted and therefore dismissed, the dismissal is without prejudice to Qureshi asserting defenses to BP's claim in the related case.

### B.  Case No. 08-61301

In the related action, BP has sued Super Stop and Qureshi for the $508,000 outstanding balance via claims of breach of contract (franchise agreement), account stated, open account, conversion (of certain equipment), replevin (of that equipment), breach of contract (re-image program), and breach of the personal guarantee.  Super Stop moved to stay this action pending resolution of the above-described state court case that has since been removed to this Court (Case No. 08-61389).

As the state court case is now pending before the undersigned, the Court concludes that the motion to stay based upon <u>Colorado River</u> abstention is moot. The Court will allow both cases to proceed together.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Super Stop #701's Motion to Remand [DE 18] is hereby **DENIED**;

2. BP Products' Motion to Dismiss Counts I-III with Prejudice [DE 15] is hereby **GRANTED**;

3. BP shall file an Answer to Count IV within 15 calendar days from the date this Order is entered;

4. Super Stop's Motion for Colorado River Abstention in Case No. 08-61301-CIV [DE 8] is hereby **DENIED**;

5. Super Stop and Qureshi shall file their Answer to the Complaint in Case No. 08-61301-CIV within 15 calendar days from the date this Order is entered;

6. Super Stop's Motion to Modify Trial Date [DE 17 in Case No. 08-61301] is hereby **GRANTED**;

7. The Calendar Call in both of these cases is reset for 9:00am on September 3, 2009, with trial reset for the two-week period commencing September 7, 2009 (as September 7, 2009 is Labor Day, the trial would not start until September 8, 2009);

8. Both of the cases are consolidated for purposes of use of discovery, though separate dockets will be maintained;

9.     The Court will reset the pretrial deadlines by separate order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 10th day of November, 2008.

_____
JAMES I. COHN
United States District Judge

copies to:

counsel of record on CM/ECF